**DOUDS, for and on Behalf of NATIONAL LABOR RELATIONS BOARD v. BUSINESS MACHINE & OFFICE APPLIANCE MECHANICS CONFERENCE BOARD, LOCAL 459, etc., CIO.**

United States District Court,
S. D. New York.

June 8, 1954.

44

George J. Bott, General Counsel N. L. R. B., David P. Findling, Associate General Counsel, Winthrop A. Johns, Assistant General Counsel, Washington, D. C., John J. Cuneo, Chief Law Officer, Second Region, New York City, Joseph A. Butler, New York City, Charles M. Henderson, Washington, D. C., Alvin Lieberman, New York City, for N. L. R. B.

Delson, Levin & Gordon, New York City (Ernest Fleischman, Carl Slater, New York City, of counsel), for respondent.

Clark, Carr & Ellis, New York City (Walter C. Taylor, New York City, of counsel), for Royal Typewriter Co.

GODDARD, District Judge.

This matter came on to be heard upon the verified petition of Charles T. Douds, Regional Director of the Second Region of the National Labor Relations Board [herein called the Board], for a temporary injunction, pursuant to Section 10(*l*) of the National Labor Relations Act, as amended 29 U.S.C.A. § 160(*l*) [herein called the Act], pending the final adjudication of the Board with respect to this matter, and upon the issuance of an order to show cause why injunctive relief should not be granted as prayed in said petition. Respondent filed an answer to said petition. A hearing on the issues raised by the petition and answer was duly held on May 24, 1954. All parties were afforded full opportunity to be heard, examine and cross-examine witnesses, present evidence bearing on the issues, and to argue on the evidence and the law. The Court has fully considered the petition, answer, evidence, and argument and briefs of counsel.

Petitioner seeks this temporary injunction against an alleged violation of Section 8(b) (4) (A) of the Act, 29 U.S.C.A. § 158(b) (4) (A). The respondent union, representing the shipping and service departments of Royal Typewriter Company, is engaged in a strike against Royal, and, in connection with this strike, has been picketing the premises of companies which use Royal machines, and of independent typewriter service companies which repair typewriters, including Royal machines.

The picketing has been conducted in front of the premises of these secondary employers at entrances used in common by employees of these secondary employers, deliverymen, and the public at large. It has been conducted, in some instances, at an hour when employees of the secondary employer would be arriving but before the public would be likely to appear; at premises of the secondary employer when no employee of Royal was there; at premises where the secondary employer did little or no business with the public; and at premises where the vast majority of the people using the building were employees of the secondary employer.

In one instance, an employee of one of the independent service companies refused to cross the picket line.

The picket signs initially read "Royal Typewriters at [giving the name of the secondary employer] are being repaired by scabs." After the Board challenged the legality of the picketing, the signs were changed to add to them "Notice to the public only", but the manner of picketing was not changed.

Respondent ceased picketing the independent service companies two days after the parties first appeared before me on the hearing of this motion for an injunction, and four days before the trial of the issues.

■ Pursuant to Section 10(*l*) of the Act, whenever the Board has reasonable cause to believe there has been a violation of Section 8(b) (4) (A), the Court may grant an injunction pending the final adjudication of the matter by the Board. As the Court said, in Penello v. Brewery Drivers, 32 L.R.R.M. 2095:

"* * * it is not necessary for the Court to determine that the practice complained of is illegal. That is for the Board to do. All that the Court determines is whether there is probable cause and a reasonable probability that the practice may be held illegal."

Respondent argues that they made no appeal to the employees of the secondary employer, and that in fact the employees took no concerted action, though it concedes that one of the objects of the picketing is to induce or force the secondary employers to cease doing business with Royal.

■ In the first place, it is sufficient if the union induces or encourages concerted conduct by the employees of a neutral employer to engage in a strike, though the effort fails. N. L. R. B. v. Denver Bldg. & Const. Trades Council, 10 Cir., 1952, 193 F.2d 421.

■ In the second place, the Board, in a recent decision, rejected the argument that such picketing was directed only at the public. In Brewery & Beverage Drivers & Workers, Local No. 67, 107 N.L.R.B. No. 104, it stated:

"This broad argument, that picketing—wherever it occurred—is aimed only at publicizing a labor dispute and not at inducing work stoppages by employees who are required in their regular employment to cross the picket line, has been too often rejected to require further elaboration here."

In that case, it held that picketing of a common entrance of a secondary employer, which was used by its employees, employees of suppliers and the public at large, where the signs of the pickets purported to appeal to the public, was a violation of Section 8(b) (4) (A).

■ Under the circumstances of this case, I find that the Board has reasonable cause to believe that there is a violation of the Act, and that an injunction should issue.

Upon the entire record, the Court makes the following:

### Findings of Fact

1. Petitioner is Regional Director of the Second Region of the Board, an agency of the United States, and filed the petition herein for and on behalf of the Board.

2. Respondent Business Machine & Office Appliance Mechanics Conference Board, Local 459, International Union of

Electrical Radio and Machine Workers, CIO [herein called respondent], an unincorporated association, is a labor organization within the meaning of Sections 2(5), 8(b), and 10(l) of the Act, 29 U.S.C.A. §§ 152(5), 158(b), 160(l), and is engaged within this judicial district in promoting and protecting the interests of its employee members and in transacting business.

3. On April 19, 1954, Royal Typewriter Company [herein called Royal] pursuant to the provisions of the Act, filed a charge with the Board alleging that respondent has engaged in and is engaging in unfair labor practices within the meaning of Section 8(b), subsection 4 (A), of the Act.

4. Said charge was referred to petitioner as Regional Director of the Second Region of the Board for investigation and was investigated by petitioner and under his supervision.

5. There is, and petitioner has, reasonable cause to believe that:

(a) Royal, a New York corporation with branch offices located in the City of New York, New York, and in 45 other states of the United States, is engaged in the business of manufacturing, selling, distributing and servicing typewriters and related products. The typewriters sold by Royal are manufactured in its factory, located at Hartford, Connecticut, and then transported to the states in which they are sold. During 1953, Royal sold within the State of New York typewriters so manufactured and transported which were valued at more than $4,000,000.

(b) Respondent represents, for the purposes of collective bargaining, the employees of the shipping and service departments of Royal at its two New York City branches, located at 2 Park Avenue, Manhattan, and 427 Flatbush Avenue Extension, Brooklyn.

(c) Since on or about March 22, 1954, respondent has been on strike against Royal because of a dispute with Royal over the terms of a collective bargaining agreement and has been picketing the two branches of Royal where its members are employed.

(d) In connection with its primary dispute against Royal, respondent, since on or about April 13, 1954, has picketed at least 25 other employers in New York City and vicinity who purchase and use Royal's typewriters and service and who otherwise do business with Royal, including Standard Brands, Inc., New York Life Insurance Company, Lily Tulip Cup Company, Vick Chemical Company, Guaranty Trust Company of New York, Manufacturers Trust Company, Sinclair Oil Corporation, Continental Can Company, Gimbel Brothers, Royal Indemnity Company and Electrolux Corporation, [herein respectively called Standard Brands, New York Life, Lily, Vick, Guaranty Trust, Manufacturers Trust, Sinclair, Continental Can, Gimbel, Indemnity and Electrolux]. The picketing was at the common entrances to office buildings where said employers' premises were located, such entrances being used by employees of said employers and by employees of other employers making deliveries, as well as by the general public. In a substantial number of cases, such picketing was carried on at times when no typewriter service or installation work was being performed on the said employers' premises either by Royal employees or by employees of independent typewriter service and repair companies.

(e) Since April 22, 1954, respondent has, from time to time, picketed Typewriter Maintenance and Sales Company, Ideal Business Machines, and Tytell Typewriter Company, Inc. [herein called Maintenance, Ideal and Tytell, respectively], independent typewriter service and repair companies in New York City which service typewriters for some of the companies other than Royal listed in subparagraph (d) above. Such picketing was carried on at the entrances to such companies' premises used by employees of such companies, by employees of other employers making deliveries, and by the general public.

(f) By the picketing described in sub-paragraphs (d) and (e) above, respondent, since on or about April 13, 1954, has engaged in, and has induced or encouraged the employees of Standard Brands, New York Life, Lily, Vick, Guaranty Trust, Manufacturers Trust, Sinclair, Continental Can, Gimbel, Indemnity, Maintenance, Ideal, Tytell and other employers to engage in, strikes or concerted refusals in the course of their employment to use, manufacture, process, transport or otherwise handle or work on goods, articles, materials or commodities or to perform services.

(g) An object of respondent's acts and conduct described above in sub-paragraphs (d), (e) and (f) has been and is to force or require Standard Brands, New York Life, Lily, Vick, Guaranty Trust, Manufacturers Trust, Sinclair, Continental Can, Gimbel, Indemnity, Electrolux, Maintenance, Ideal, Tytell and other employers or persons to cease using, selling, handling, transporting or otherwise dealing in the products of Royal or to cease doing business with Royal or persons who do business with Royal.

(h) At no time material herein has respondent had any dispute whatever with any of the employers referred to in subparagraphs (d) and (e) above, except Royal, concerning the wages or terms or conditions of employment of their employees.

(i) The acts and conduct of respondent set forth in subparagraphs (d), (e), (f) and (g) above, occurring in connection with the operations of Royal, have a close, intimate and substantial relation to trade, traffic and commerce among the several states, and tend to lead to labor disputes burdening and obstructing commerce and the free flow of commerce.

6. It may be fairly anticipated that, unless restrained, respondent will repeat or continue the acts and conduct set forth in paragraph 5, sub-paragraphs (d), (e), (f) and (g) above, or similar or like conduct, an object thereof being to force or require Standard Brands, New York Life, Lily, Vick, Guaranty Trust, Manufacturers Trust, Sinclair, Continental Can, Gimbel, Indemnity, Electrolux, Maintenance, Ideal, Tytell and other employers or persons to cease using, selling, handling, transporting or otherwise dealing in the products of Royal or to cease doing business with Royal or persons who do business with Royal.

## Conclusions of Law

There is, and petitioner has, reasonable cause to believe that:

1. Royal is engaged in commerce within the meaning of Section 2(6) and (7) of the Act.

2. Respondent is a labor organization within the meaning of Sections 2(5), 8 (b), and 10(*l*) of the Act.

3. This Court has jurisdiction of the parties and of the subject matter of this proceeding, and is empowered to grant injunctive relief under Section 10(*l*) of the Act.

4. Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b) (4) (A) of the Act, affecting commerce within the meaning of Section 2(6) and (7) of the Act, and a continuation of such practices will impair the policies of the Act as set forth in Section 1(b) thereof.

5. To preserve the issues for the determination of the Board as provided in the Act, and to avoid irreparable injury to the policies of the Act and to the public interest, it is appropriate, just and proper that, pending the final adjudication of the Board with respect to this matter, respondent, its officers, agents, servants, representatives, employees, members, attorneys, and all persons acting in concert or participation with it, be enjoined and restrained from the commission of the acts and conduct set forth in Findings of Fact 5(d), (e), (f) and (g) above, acts in furtherance or support thereof, and like or related acts or conduct, the commission of which in the future may fairly be anticipated from respondent's acts and conduct in the past.

Settle decree on notice.